# IN THE COURT OF APPEALS OF IOWA

No. 21-0548
Filed September 1, 2021

**IN THE INTEREST OF P.K.,**
**Minor Child,**

**R.K., Father,**
  Appellant,

**S.G., Mother,**
  Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother and father separately appeal the adjudication of their child as a child in need of assistance. **AFFIRMED ON BOTH APPEALS.**

Shannon M. Leighty of the Public Defender Office, Nevada, for appellant father.

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Patrick Peters, Ames, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A mother and a father separately appeal from the adjudication of their child, P.K., as a child in need of assistance (CINA). Both parents challenge the statutory grounds and whether aid was required. We affirm.

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[W]e are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the child[]'s best interest." *Id.* (citation omitted). "In determining the best interests of the child, 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (alteration in original) (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006)).

The juvenile court adjudicated P.K. as CINA under Iowa Code section 232.2(6)(c)(2) (2020). This section provides a child may be adjudicated as CINA when the child "has suffered or is imminently likely to suffer harmful effects as a result" of "[t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(c)(2). "The use of 'harmful effects' in this context 'pertains to the physical, mental, or social welfare of the child.'" *L.H.*, 904 N.W.2d at 150 (citation omitted). Following a review of the record, we conclude the ground for adjudication is met.[1]

---

[1] The State asks us also to find grounds for adjudication met under Iowa Code section 232.2(6)(n). The juvenile court found the State failed to establish this ground by clear and convincing evidence. And the State did not cross-appeal that ruling. However, the State argues we could also adjudicate P.K. under this ground because, "It is well settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filling a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the [juvenile] court." *See In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016) (citation omitted). But finding *additional*

We focus our attention on the days leading up to Thanksgiving 2020. That Monday the father became fixated on his belief the mother was cheating on him. He led the mother to their back porch, grabbed her by the throat, held her against a wall, and punched her in the face. As a result of the father's violence, the mother was left with a swollen eye and a mark on her neck, both of which were visible days later. The next day, the father again accused the mother of cheating, held her down, held a hammer over her head, and threatened to hit her in the head if she did not confess to cheating. The mother spent the night sleeping on the floor next to P.K., who was sleeping in a portable crib in the same room. On Wednesday, the parents again argued over whether the mother was cheating, and the father fled the home with P.K. On Thanksgiving, the father returned to retrieve a coat and car seat for P.K. He became agitated and again left the home, carrying P.K. down a dark road without sidewalks. The father encountered police and became agitated and argumentative with them as he held P.K. Eventually police arrested the father for domestic abuse assault, third or subsequent offense; domestic abuse assault with strangulation causing bodily injury; and interference with official acts. The father eventually pled guilty to domestic abuse assault causing bodily injury, second offense.

---

*grounds for adjudication* fundamentally differs from instances where this court affirms a lower court on *alternative grounds* than those relied upon by the lower court. So we conclude if the State wanted us to affirm the juvenile court's ruling as to section 232.2(6)(c)(2) and reverse the juvenile court's ruling as to section 232.2(6)(n) to also find that ground satisfied, the State was required to cross-appeal, which it did not. So we do not address the statutory ground under section 232.2(6)(n).

This retelling of events highlights domestic violence within the home to which P.K. has been exposed.

> "Studies estimate that children living in a home with a batterer have a 70 percent chance of becoming the victim of abuse themselves. In addition, 40 percent of suspected child abuse involves a history of family violence." Further, "[c]hildren from violent homes may also experience impaired social competence and even post-traumatic stress disorder (PTSD)."

*Id.* at 153 (alteration in original) (citations omitted). So exposure to domestic violence is harmful to children. *Id.* This exposure to domestic violence satisfies the requirements of section 232.2(6)(c)(2). Therefore, we find the statutory grounds established.

Both parents contend even if the statutory ground is satisfied, the juvenile court should not have concluded aid was required to resolve the deficiencies in the home. Section 232.96(8) provides, "If the court concludes that facts sufficient to sustain a petition have not been established by clear and convincing evidence or *if the court concludes that its aid is not required in the circumstances*, the court shall dismiss the petition." (Emphasis added.) The parents both argue any concerns the court or the Iowa Department of Human Services (DHS) has will be addressed by the conditions of the father's probation. Again, we disagree.

The father's probation does not fully address DHS's concerns for this family. Moreover, the record demonstrates domestic violence is an ongoing issue for the father, which he seemingly has not resolved through his involvement with our criminal justice system alone. In fact, the father's most recent domestic abuse assault conviction is his sixth. So we think DHS involvement is necessary to provide more all-encompassing services to the father to resolve the potential harm

he presents to P.K.  And though the mother initially seemed to want the father to keep his distance, she is now anxious to reunite with the father and resistant to services that could benefit the family.  We do not believe she will independently seek the services she needs to ensure P.K. has a safe home.  Therefore, we conclude court aid was necessary.  *Cf. id.* at 153–54.

**AFFIRMED ON BOTH APPEALS.**